UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | CIVIL ACTION |
| VERSUS | * | NO. 08-1628 |
| CURTIS JOHN CONEY, JR., ET AL. | * | SECTION "L" (2) |

**ORDER & REASONS**

The Court has pending before it the United States' Motion for Summary Judgment (Rec. Doc. 59). The Court has reviewed the briefs and the applicable law and now issues this Order and Reasons.

I.      **Procedural History**

This case arises out of a dispute over unpaid taxes on income from the personal injury law practice of Defendant Curtis John Coney, Jr. ("Coney") for the tax years 1996 through 2001. The core facts are not disputed. During the tax years 1996 through 2001, Coney hired certain individuals, known as "runners," to solicit personal injury clients for his law practice. Coney often paid the runners in cash and obtained that cash by writing checks payable to "cash" and negotiating those checks at local banks. Coney instructed his staff to structure those transactions and cash checks worth less than $10,000 on any day in order to evade the Federal Currency Transaction Reporting Act ("FCTRA"), which requires banks to report currency transactions greater than $10,000 in a single day to the IRS, among other agencies. 31 U.S.C. § 5313; 31

C.F.R. § 103.22, 103.27(a)(4).[1]  The United States alleges that Coney withdrew approximately $2.1 million in cash during this period, and paid some of that cash, as well as $300,000 in checks, to the runners.

On April 18, 2002, after Coney's legal assistant was subpoenaed by a federal grand jury, Coney and his wife, Defendant Barbara Coney, met with the assistant and urged her to give false testimony to the grand jury.  The grand jury returned an indictment charging Coney with twelve counts:  (a) one count of conspiracy to defraud the United States by evading the federal currency transaction reporting requirements; (b) ten counts of structuring financial transactions to evade the federal currency transaction reporting requirements and aiding and abetting in connection therewith; and (c) one count of obstruction of justice by attempting to influence the federal grand jury testimony of a certain witness and aiding and abetting in connection therewith.  Barbara Coney was charged with one count of obstruction of justice arising out of the attempted witness tampering.[2]  On May 14, 2003, the Defendants pled guilty to all felony counts.  On September 10, 2003, Coney was placed on interim suspension from the practice of law in Louisiana.  In 2005, the Louisiana Supreme Court ordered that Coney be permanently disbarred from the practice of law in Louisiana.

Also during the tax years 1996 to 2001, Defendants filed joint income tax returns but failed to pay the full amount of taxes they declared as owed.  The United States subsequently

---

[1] Congress enacted the reporting requirement "to require certain reports or records where they have a high degree of usefulness in criminal, *tax*, or regulatory investigations or proceedings."  31 U.S.C. § 5311 (emphasis added).

[2] Barbara Coney signed a factual basis in which she agreed that she had "full knowledge" of Curtis Coney's use of the assistant to make runner payments.  (Govt. Exh. 17 at 6).

imposed upon Defendants an assessment for unpaid taxes in the amount of $3,074,456, including penalties and interest. On October 12, 2005, after the IRS made those assessments, Defendants jointly filed a voluntary petition for bankruptcy relief under Chapter 7 of Title 11. On March 6, 2006, the bankruptcy court entered an Order granting a discharge pursuant to 11 U.S.C. § 727. The bankruptcy court was not presented with and did not rule on the dischargeability of the Defendants' tax liability. The United States later filed the present suit, alleging that the unpaid tax assessments are excepted from bankruptcy discharge pursuant to 11 U.S.C. § 523(a)(1)(C).[3]

## II.     Present Motions

The United States has now moved for summary judgment. The United States argues that in light of the undisputed facts, as a matter of law Defendants' unpaid tax liabilities for the years 1996 through 2001 are non-dischargeable in bankruptcy and should be reduced to judgment.[4] The United States proffers ample undisputed evidence Defendants had the ability to pay some or all of their declared tax liability but failed to do so and have since refused to pay despite demand from the United States. The United States further argues that the criminal conduct to which Defendants pleaded guilty was intended to remove cash from the reach of the IRS instead of using it to pay Defendants' acknowledged tax liability and that the transactions were structured to conceal that conscious choice from the IRS, among others. Therefore, the United States argues that there is no genuine dispute of material fact that Defendants "willfully attempted in

---

[3]The United States filed suit against Curtis and Barbara Coney. On September 10, 2010, Curtis Coney passed away. On January 11, 2011, the Court granted a motion substituting Barbara Coney for Curtis Coney, in her capacity as executrix of his succession. (Rec. Doc. 83). Barbara Coney remains a defendant in her individual capacity.

[4]The United States does not seek summary judgment with respect to penalties or interest on penalties, because those amounts were discharged in bankruptcy. 11 U.S.C. § 523(a)(7)(B).

3

any matter to evade or defeat such tax" and that the tax liability was not discharged in bankruptcy. 11 U.S.C. § 523(a)(1)(C).

Defendants respond that they have not willfully attempted to evade their taxes. They admit that they made illegal payments to runners to generate business and illegally structured those transactions to conceal the use of runners; however, Defendants argue that the intent of those criminal actions was to conceal the use of the runners and not to evade tax liability. Defendants instead assert that they filed correct tax returns and have attempted to pay their acknowledged tax liability to the best of their abilities.[5]

**III.    Law & Analysis**

**A.    Summary Judgment Standard**

A district court can grant a motion for summary judgment only when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When considering a motion for summary judgment, the district court "will review the facts drawing all inferences most favorable to the party opposing the motion." *Reid v. State Farm Mut. Auto. Ins. Co.*, 784 F.2d 577, 578 (5th Cir. 1986). The court must find "[a] factual dispute . . . [to be] 'genuine' if the evidence is such that a reasonable jury could return a verdict for the nonmoving party . . . [and a] fact . . . [to be] 'material' if it

---

[5] Defendants also filed two motions to strike two statements from the United States' statement of undisputed facts. (Rec. Docs. 66, 67). Defendants criticize one statement relating to alleged advice given to Defendants by their attorneys, and another statement relating to the allegedly fraudulent nature of certain of Defendants' tax returns. The United States opposed one of those motions and offered to amend its factual statement with regards to the other. (Rec. Docs. 71, 72). However, the factual assertions at issue in the Defendants' motions are unrelated to the undisputed facts that support the Court's ruling on the United States' motion for summary judgment. Accordingly, the motions to strike are denied as moot.

might affect the outcome of the suit under the governing substantive law." *Beck v. Somerset Techs., Inc.*, 882 F.2d 993, 996 (5th Cir. 1989) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

"If the moving party meets the initial burden of showing that there is no genuine issue of material fact, the burden shifts to the non-moving party to produce evidence or designate specific facts showing the existence of a genuine issue for trial." *Engstrom v. First Nat'l Bank of Eagle Lake*, 47 F.3d 1459, 1462 (5th Cir. 1995). The mere argued existence of a factual dispute will not defeat an otherwise properly supported motion. *See Anderson*, 477 U.S. at 248. "If the evidence is merely colorable, or is not significantly probative," summary judgment is appropriate. *Id.* at 249-50 (citations omitted).

**B.     Bankruptcy Discharge of Tax Liability**

Tax liabilities, like other debts arising prior to the filing of a bankruptcy petition, are generally dischargeable in bankruptcy unless a statutory exception applies. *In re Bruner*, 55 F.3d 195, 197 (5th Cir. 1995). A debtor may not discharge a tax liability "with respect to which the debtor made a fraudulent return *or willfully attempted in any manner to evade or defeat such tax*." 11 U.S.C. § 523(a)(1)(C) (emphasis added).

The leading Fifth Circuit case interpreting § 523(a)(1)(C) is *In re Bruner*. In *Bruner*, the defendant husband and wife failed to file tax returns or pay taxes for eight years and made substantial cash transactions which concealed income from the IRS. 55 F.3d at 196. The defendant husband pled guilty to one count of willfully failing to file a tax return and the couple subsequently filed for Chapter 7 bankruptcy and sought to discharge the substantial income tax liability. *Id.* The Fifth Circuit affirmed the district court's use of a three-prong test for whether a

defendant's tax debt is dischargeable under § 523(a)(1)(C) :

> [T]he proper test is whether, in the case of a debtor who is financially able to pay his taxes but chooses not to do so, (1) the debtor had a duty under the law, (2) the debtor knew he had that duty, and (3) the debtor voluntarily and intentionally violated that duty.

*Id.* at 197. The Fifth Circuit concluded that, on the facts of the case, the defendants' "pattern of non-payment ... particularly when accompanied by a pattern of failure to file returns and coupled with conduct obviously aimed at concealing income and assets, *certainly* constitutes a willful attempt to evade taxes for purposes of § 523(a)(1)(C)." *Id.* at 200 (emphasis added).

It bears repeating that the requisite mental element of "willfulness" required by § 523(a)(1)(C), as interpreted by *Bruner*, is only that the violation of a duty to pay taxes be "voluntary and intentional." Fraudulent intent is not required. *See id.* at 200; *In re Fretz*, 244 F.3d 1323, 1330 (11th Cir. 2001); *In re Fegeley*, 118 F.3d 979, 984 (3rd Cir. 1997). "[T]he IRS does not have to show that the debtor had an evil motive or a bad purpose in not paying his taxes." *In re Ryan*, 286 B.R. 141, 148 (Bankr. W.D. Mo. 2002). "A finding of 'willfulness' requires only a showing that the debtor *took such actions* willingly, not that he took such actions with an intent to defraud the United States." *In re Hamm*, 356 B.R. 263, 284 (Bankr. S.D. Fla. 2006) (emphasis added). The willfulness requirement is intended to "prevent[] the application of the exception to debtors who make inadvertent mistakes, reserving nondischargeability for those whose efforts to evade tax liability are knowing and deliberate." *In re Ryals*, 424 B.R. 539, 544 (Bankr. M.D. Fla. 2009) (quotation omitted). Even if a choice to use one's assets for a purpose other than paying taxes is made in subjective "good faith," that choice may still be "voluntary and intentional" for the purposes of § 523(a)(1)(C). *See In re Long*, 419 B.R. 884, 888-89 (Bankr. M.D. Fla. 2009) (finding nondischargeability where debtor gambled away funds in

"good faith" hopes of winning enough to later pay tax liability).

The Fifth Circuit has not drilled down to the lower thresholds of "willfulness" or decided whether "'mere' non-payment" of taxes would suffice for nondischargeability in the absence of some additional affirmative acts. *See* 55 F.3d at 200; *see also In re Grothues*, 226 F.3d 334, 338 (5th Cir. 2000). In *Bruner*, the court emphasized the "flagrant conduct" which included "a pattern of failing to report income, failing to file tax returns, and failing to pay taxes," as well as "conduct[ing] and inordinate number of cash transactions and even creat[ing] a shell entity designed to conceal their income and assets." *Id.* Therefore, the Fifth Circuit did not have occasion to decide whether "a *properly acknowledged* tax liability which the debtor simply did not pay" could suffice to make that liability non-dischargeable under § 523(a)(1)(C) in the absence of additional affirmative acts. *Id.* at 200.

**C.     Nondischargeability**

In this case, Defendants do not dispute two of the three elements of the *Bruner* test. Defendants were certainly aware of their duty to pay their entire tax liability; they filed prior joint tax returns which "obviously" suffice to show knowledge of "a duty to file a return and pay their taxes." *See* 55 F.3d at 199. Likewise, it is not seriously disputed that Defendants had the ability to pay all or part of the unpaid tax liability. The United States presents competent summary judgment evidence that between 1996 and 2001, Coney withdrew $2.1 million in cash (and cashed over $1 million in attorneys' fee checks) and issued an additional $300,000 in checks to runners, and used none of these funds to pay tax liabilities. Although Defendants argue that the checks were legitimate reimbursements and that not all of the $2.1 million in withdrawn cash was used for runner payments, counsel for Defendants conceded at oral

argument that Defendants could have paid their tax liability with the illegally diverted runner payments but chose not to pay.[6] Thus, as the Defendants correctly observe, the crux of this case is willfulness, or whether they knowingly and intentionally violated their duty to pay their taxes.

The core facts pertaining to willfulness, which formed the basis of Defendants' criminal prosecution, are not disputed.[7] Defendants filed joint tax returns for the period in question but did not fully pay the taxes owed.[8] They made illegal cash payments to runners for bringing in personal injury clients. They intentionally structured those runner transactions to evade the FCTRA, which otherwise would have sent reports of those cash withdrawals to the IRS. Defendants further attempted to conceal those transactions from the government by influencing the testimony of a grand jury witness. Defendants pleaded guilty to criminal charges based on that conduct and admitted all of those facts. The parties diverge on whether, as a matter of law, this conduct satisfies the third prong of the *Bruner* test.

The United States argues that these undisputed facts conclusively establish that Defendants "voluntarily and intentionally violated" their duty to pay their taxes. The United States characterizes the course of conduct as a voluntary and intentional choice to pay runners in the hopes of generating future revenue, instead of paying their acknowledged tax liability. The

---

[6] Moreover, there is authority that a debtor can still "willfully attempt in any way to evade or defeat" a tax liability even if he or she lacks the financial means to pay the entire liability. *See United States v. Doyle*, 276 F. Supp. 2d 415, 424 (W.D. Pa. 2003). Whether a "debtor has the ability to pay is, of course, an appropriate factor in making that determination [of willfulness], but it is *not* a litmus test." *In re Grothues*, 226 F.3d at 339 (emphasis in original).

[7] "[A] guilty plea is an admission of all the elements of a formal criminal charge." *McCarthy v. United States*, 394 U.S. 459, 466 (1969).

[8] Defendants contend that their tax liability for 1997 was paid in full. As will be discussed below, Defendants have not provided competent summary judgment evidence to generate a dispute of fact on that point.

United States emphasizes that whatever Defendants' subjective intent was, the natural and inescapable effect of that decision was to shift cash assets out of the reach of the IRS and to defeat the IRS's ability to collect that tax liability.  Furthermore, by structuring the runner transactions to avoid the FCTRA, Defendants made a voluntary and intentional choice which had the natural and inescapable effect of concealing the existence of those substantial cash transactions from the IRS, further defeating or delaying the IRS's ability to collect.  Defendants compounded their efforts to evade detection by government agencies by attempting to influence a grand jury witness.  The United States argues that nonpayment, combined with these voluntary affirmative actions which transferred and concealed substantial amounts of money that could have been used to pay taxes, suffice as a matter of law to show a willful attempt "in any manner" to evade or defeat their tax liability such that the liability is nondischargeable.

　　Defendants put a different gloss on these undisputed facts.  Defendants concede (as they must) that the illegal runner payments, transaction structuring, and obstruction of justice occurred.  However, Defendants argue that those actions were not done with the intent to evade or defeat any tax liability.  Rather, Defendants contend that the sole purpose was to procure additional personal injury clients.  Defendants contend that the payments, though illegal, were strictly a business expense which Defendants did not deduct and therefore had no favorable tax benefits for them and did not conceal or hide any income from the IRS.[9]  They argue that they filed tax returns fully and completely disclosing their income and actual tax liability, and that

---

[9]The parties genuinely dispute whether any improper deductions were taken for the cash runner payments.  On summary judgment the Court accepts as true that the runner payments did not hide any income from the IRS or reduce the amount of taxes the Defendants claimed as owed.

their criminal conduct was wholly divorced from any tax-related goals or consequences. Defendants also argue that the fact that they pled guilty to criminal charges arising out of that conduct neither proves, nor estops them from disputing, their intent to evade or defeat a tax. *Cf. In re Carmel*, 134 B.R. 890, 905 (N.D. Ill. 1991) (guilty plea to mail and wire fraud arising out of embezzlement did not estop debtor from disputing intent element for fraudulent nonpayment of taxes). Essentially, Defendants admit that they "got in a hole" and did not pay the IRS what they acknowledged they owed, but deny that they had the requisite intent to evade or defeat their tax liability. Therefore, Defendants argue that the United States has not carried its burden to show that their conduct was willful or that summary judgment is appropriate.

The Defendants read more into the *Bruner* test than the Fifth Circuit requires. For nondischargeability, the violative conduct must be "knowing" and "intentional," but that is a lesser standard than fraudulent intent. *See Bruner*, 55 F.3d at 200; *Fretz*, 244 F.3d at 1330; *Fegeley*, 118 F.3d at 984 (holding that fraudulent intent is not required and that the "majority of courts to address this issue ... have adopted the test for 'civil willfulness.'"). Defendants do not refer the Court to any case holding that the United States must show that Defendants acted with the specific intent to defeat or evade a tax. It is enough for the purposes of the statute that they took their actions knowingly and intentionally, and that the actions had the effect of defeating the IRS's ability to fully recover an unpaid tax liability. *See In re Hamm*, 356 B.R. at 284.

Thus, applying the Fifth Circuit's test for "willfulness" and drawing all inferences from the undisputed facts in the light most favorable to the Defendants, summary judgment is appropriate. Defendants did not pay their entire tax liability. No reasonable trier of fact could conclude that Defendants did not voluntarily and intentionally pay substantial sums of cash to

runners to secure more personal injury clients to increase revenue instead of using that money to pay their tax liability.  Further, no reasonable trier of fact could conclude that Defendants did not structure the runner transactions to evade the FCTRA regulations, the natural and inescapable consequence of which was to conceal those substantial cash transactions from the IRS.  In fact, the factual basis setting forth the charged conduct, which Defendants signed, stated that the CTR reports were required to be sent to the IRS.  Neither Defendant has offered any competent summary judgment evidence that they were not aware that the IRS would receive currency transaction reports.  No reasonable trier of fact could conclude that Defendants did not voluntarily and intentionally attempt to influence a grand jury witness to conceal the structuring scheme, which itself concealed the existence of the cash transactions from the IRS.  This conduct by the Defendants was willful, because it was it was voluntary and intentional.  Further, the conduct defeated the IRS's ability to recover the taxes Defendants owed by shifting cash assets out of Defendants' possession in a manner that concealed the movement from the IRS.  As a matter of law, this constitutes willfully attempting, in any manner, to defeat or evade a tax.

     Although Defendants' undisputed conduct is admittedly different from that in *Bruner*, it is nonetheless comfortably above the unresolved minimum required for nondischargeability.  The *Bruner* defendants did not file tax returns at all and actively sought to conceal income from the IRS.  In this case, making all inferences in Defendants' favor, Defendants accurately reported their income to the IRS but failed to pay it.  But this is still not the case of a debtor who "honestly and diligently filed his tax returns, but ... used his income to pay his personal and business debts rather than his tax liability." *Bruner*, 55 F.3d at 200.  Defendants went well beyond mere non-payment by structuring their cash transactions in a manner that concealed them

from the IRS.

Summary judgment is appropriate despite the existence of disputes regarding certain peripheral, immaterial facts. For example, the parties genuinely dispute whether or not any of Defendants' tax returns from 1996 to 2001 were fraudulent. However, filing a fraudulent return is not necessary for nondischargeability. 11 U.S.C. § 523(a)(1)(C). The parties also dispute whether the approximately $300,000 in checks paid to the runners were also improper structured payments or whether the checks reimbursed runners for legitimate business expenses. Even if the check payments were entirely legitimate, Defendants admit that the substantial cash payments could have been applied to their tax liability. Likewise, disputes regarding the luxury of Defendants' lifestyle, the salaries paid to CLS, Inc. employees, or the nature of certain transactions to and from Coney's father's bank accounts are tangential to the undisputed facts, which support summary judgment.[10]

The Defendants also rely heavily on their purported efforts to resolve their tax liability, as well as a repayment deal they allegedly reached with the IRS. The terms of that "deal" are disputed, but it is undisputed whatever "deal" may have been struck occurred at a time when Defendants were evading the FCTRA and concealing substantial cash transactions from the IRS.

---

[10]The parties also dispute the significance of a statement made by Barbara Coney in connection with tampering with the grand jury witness, in which Mrs. Coney alluded to adverse tax implications should the transaction structuring come to light. The United States argues that this statement shows a knowledge of the tax implications of the Defendants' criminal actions and supports a finding of intentional evasion. Defendants respond that the statement obviously referred to tax implications for the runners if they were not declaring cash payments as income. Defendants contend that the structured payments had no tax implications for Defendants, because the payments were not deducted from gross income. Even if Mrs. Coney was referring solely to adverse consequences for the runners, the fact does not undermine the appropriateness of summary judgment.

Defendants cite no authorities for the proposition that their subjective "good faith" defeats non-dischargeability under § 523(a)(1)(C).

Thus, for all the foregoing reasons, the United States is entitled to judgment as a matter of law that the Defendants willfully attempted to evade their tax liability, and therefore that the unpaid tax liability (exclusive of interest and penalties) was not discharged in Defendants' bankruptcy proceeding.

**D.      Amount of Nondischarged Tax Liability**

The United States also moves to reduce the amount of unpaid tax liability to judgment. It is undisputed that in their tax returns for the years 1996 through 2001, the Defendants reported $2,739,542 in tax liability.[11] It is also undisputed that the IRS made assessments against the Defendants for that unpaid tax liability. The Government submits certified records of all payments the Defendants made towards their tax liability for the years in question, which reflect a total unpaid tax liability of $1,311,729, exclusive of interest and penalties.[12] Defendants dispute only the amounts owed for tax year 1997, which they contend they have fully paid.

On their 1997 tax return, Defendants stated that their tax payments and amounts applied from their 1996 tax return purportedly satisfied their tax liability of $638,400 for 1997. (Govt. Exh. 2 at p. 3). However, the summary judgment record is devoid of competent evidence of payments exceeding the declared tax liability. The Government's certified records disclose total payments of $502,104 towards the 1997 tax liability. (Govt. Exh. 2 at p.3, Exh. 109). The

---

[11]The amounts were $597,359 for 1996, $638,400 for 1997, $506,760 for 1998, $402,384 for 1999, $350,755 for 2000, and $243,884 for 2001. (Govt. Exh. 109, Rec. Doc. 70-4).

[12]The unpaid amounts are $298,262 for 1996, $136,296 for 1997, $18,254 for 1998, $300,537 for 1999, $331,482 for 2000, and $226,898 for 2001. (Govt. Exhs. 7-12, Exh. 109).

Defendants provide a ledger of tax payments as well as copies of negotiated checks which match the payments made towards the 1997 tax liability reflected in the United States' records. (Rec. Doc. 68-5 at 7, 13-18). Both the United States' and the Defendants' records indicate that the Defendants had $77,104.00 withheld from income in 1997, and subsequently made payments totaling $425,000. Thus, the unanimous summary judgment evidence establishes that Defendants have paid $502,104 towards their undisputed declared tax liability of $638,400 for 1997.

Defendants assert in their statement of disputed material facts that "they have paid their 1997 tax liability in full." (Rec. Doc. 68-1 at 2). Defendants evidently rely on a brief assertion by Barbara Coney in a deposition that she "had ledger sheets that's [sic] showed the '96, '97 and '98 were paid." (Govt. Exh. A at 214:16-18). This testimony is simply insufficient to raise a genuine dispute of fact, in light of the actual payment records submitted by both the United States and the Defendants, which confirm that $136,296 of the Defendants' tax liability for 1997 remains unpaid. Thus, in the absence of a genuine dispute of fact regarding the amount of unpaid tax liability, the United States is entitled to judgment as a matter of law and reduction of the unpaid assessments to judgment.

## IV.    CONCLUSION

Accordingly, for the foregoing reasons, the United States' motion for summary judgment is GRANTED. A separate judgment for the unpaid tax assessments for the tax years of 1996 through 2001 in the amount of $1,311,729 will issue.

IT IS FURTHER ORDERED that the Defendants' motions to strike (Rec. Docs. 66, 67) are DENIED as moot.

Case 2:08-cv-01628-EEF-JCW   Document 84   Filed 03/22/11   Page 15 of 15

New Orleans, Louisiana, this 21st day of March, 2011.

_____
UNITED STATES DISTRICT JUDGE